IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Action No. 23-cv-02572-LTB

J.F.M.,

                Plaintiff,

v.

MARTIN J. O'MALLEY, Commissioner of Social Security,

                Defendant.

---

## ORDER

---

This matter is before me on review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying Plaintiff's application for disability insurance benefits ("DIB"), made pursuant to Title II, 42 U.S.C. §§ 401, *et. seq.,* of the Social Security Act. After consideration of the briefs and the administrative record, and for the reasons set forth in this order, the Commissioner's decision is AFFIRMED.

## I. BACKGROUND

Plaintiff seeks judicial review of the Commissioner's final decision denying his DIB application filed on June 17, 2019, in which he claimed that he was disabled

beginning on October 3, 2017. ECF No. 9-5 at 212.[1] An Administrative Law Judge ("ALJ") found him not disabled on May 27, 2021. ECF No. 9-2 at 31-46. After this court remanded the ALJ's initial decision, based on sentence four of 42 U.S.C. § 405(g), the ALJ held an evidentiary hearing [ECF No. 9-13 at 2613-40], and again found Plaintiff not disabled for the period of his alleged onset date (October 3, 2017) through his date last insured (December 31, 2022). ECF No. 9-13 at 2582-2603.

The SSA Appeals Council subsequently declined Plaintiff's exceptions to the ALJ's decision rendering it final. ECF No. 9-13 at 2566-73. Plaintiff timely filed his complaint with this court seeking review of the Commissioner's final decision. ECF No. 1.

## II. FACTUAL BACKGROUND

Plaintiff was 38 years old on his onset date, and 43 years on his date of last insured. ECF No. 9-3 at 90. ECF No. 9-6 at 245. ECF No. 9-13 at 2585. He graduated from high school and spent two years training as a diesel mechanic. ECF No. 9-2 at 58. Plaintiff's past relevant work was as a diesel mechanic, heavy equipment mechanic, and automobile mechanic. ECF No. 9-2 at 83. ECF No. 9-6 at 245. Plaintiff sought DIB benefits based on his inability to work due to both physical and mental limitations from his spinal injuries, and his "PTSD Mental." ECF No. 9-6 at 244.

## III. ALJ's DECISION

---

[1] When citing to the Administrative Record, the court utilizes the docket number assigned by the court's Case Management/Electronic Case Files ("CM/ECF") system and the page number associated with the Administrative Record, found in the bottom right-hand corner of the page. For all other documents, the court cites to the document and page number generated by the CM/ECF system.

In her final decision, the ALJ applied the five-step sequential process for determining whether an individual is disabled outlined in 20 C.F.R. § 404.1520(a). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his October 3, 2017 onset date. ECF No. 9-13 at 2585. At step two, the ALJ found that Plaintiff had the severe physical impairments of: degenerative disc disease; generalized anxiety disorder; major depressive disorder, recurrent, moderate; and somatic disorder. *Id.* The ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments deemed to be so severe as to preclude substantial gainful employment at step three. *Id.* at 2586.

The ALJ next determined that Plaintiff had the residual functional capacity (the "RFC") to perform a range of light work, as defined in 20 C.F.R. § 404.1567(b), in that he:

> can frequently lift or carry 10 pounds and occasionally lift or carry 20 pounds. He can stand or walk a total of six hours, and sit a total of six hours, in an eight-hour workday with normal breaks. He can perform pushing and pulling motions with his upper and lower extremities, within the aforementioned weight restrictions. He can frequently climb ramps and stairs, crouch, kneel and crawl. [H]e can occasionally climb ladders, ropes and scaffolds. He can occasionally stoop. [*Id.* at 2588]

In addition, the ALJ found that Plaintiff:

> requires work that entails routine repetitive tasks and simple decision making. He requires work that is occasionally in close proximity to coworkers or supervisors, and no frequent or prolonged direct contact with the public. [*Id.*]

At step four, the ALJ found that, based on his assessed RFC, Plaintiff was unable to perform any of his past relevant work. *Id.* at 2601.

At step five, the ALJ ruled that considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff was capable of making a successfully adjustment to and could have performed through the date of last insured. *Id.* at 2602-03. The ALJ therefore concluded, at step five, that Plaintiff was not disabled, as defined by the Social Security Act, from his disability onset date of October 3, 2017, through the date of last insured of December 31, 2022. *Id.* at 2603.

## IV. STANDARD OF REVIEW

When deciding Social Security appeals, courts review the ALJ's decision to determine whether the factual findings were supported by substantial evidence in the record as a whole, and whether the correct legal standards were applied. *Levan v. Berryhill*, No. 18-CV-02340-NRN, 2019 WL 2336852 (D. Colo. 2019) (unpublished) (citing *Pisciotta v. Astrue*, 500 F.3d 1074, 1075 (10th Cir. 2007)); *see also Williamson v. Barnhart*, 350 F.3d 1097, 1098 (10th Cir. 2003).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Kidd v. Comm'r, SSA*, No. 21-1363, 2022 WL 3041097 at *2 (10th Cir. Aug. 2, 2022) (unpublished) (quoting *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)). "[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). And "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue, supra*, 489 F.3d at 1084 (citing

*Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Additionally, "[t]he failure to apply proper legal standards may, under the appropriate circumstances, be sufficient grounds for reversal independent of the substantial evidence analysis." *Kidd v. Comm'r, supra*, 2022 WL 3041097, at *2 (quoting *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014)); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996). Therefore, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

As a result, reviewing courts "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but we will not reweigh the evidence or substitute our judgment for the Commissioner's." *Lax v. Astrue, supra*, 489 F.3d at 1084.

# V. ANALYSIS

On appeal, Plaintiff asserts that the ALJ erred in evaluating whether his degenerative disc disease met a listing at step three. In addition, he argues that the assessed RFC was not supported by substantial evidence because the ALJ erred in improperly determining the persuasiveness of the medical opinions in the record, and by discounting his reported pain and his resulting limitations on his ability to work.

## A. Listings 1.15 at Step Three

I first address Plaintiff's assertion that the ALJ erred when finding that his degenerative disc disease did not meet a listing at step three. ECF No. 10 at 30-31. Specifically, Plaintiff challenges the ALJ's determination that "there is no evidence

showing compromise of a nerve root" and her ruling that, as such, he did not meet the requirements of Listing 1.15. ECF No. 10 at 30-31 (quoting ECF No. 9-13 at 2586).

At step three, the ALJ determines whether a claimant's impairment "is equivalent to one of a number of listed impairments that the Secretary [of Social Security] acknowledges as so severe as to preclude substantial gainful activity." *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996) (citing *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988)); *see also* 20 C.F.R. § 404.1520(d); Appendix 1 to C.F.R. Title 20, Part 404, Subpart P. App. 1 at 13-14 (the "Listings"). The Listings "streamlin[e] the decision process by identifying those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987). If the claimant's impairment meets or equals a listed impairment, it is conclusively presumed to be disabling, and the claimant is entitled to benefits. *Lax v. Astrue*, *supra*, 489 F.3d at 1085. To meet a listing, the claimant's impairments must satisfy all of the criteria of that listing, 20 C.F.R. § 404.1525(c)(3), and it is the claimant's burden to present evidence establishing that his or her impairments meet or equal a listed impairment. *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005).

In this case, the ALJ determined that Plaintiff's degenerative disc disease did not meet or medically equal any listed impairment, and:

> In making this finding, the undersigned considered Sections 1.15 and 1.16 of the Listing of Impairments. As for 1.15, there is no evidence showing compromise of a nerve root. Regarding 1.16, there is evidence of only mild lumbar spinal stenosis. Furthermore, there is no evidence of weakness and decreased sensation or decreased deep tendon reflexes on a consistent basis. Of note, there was concern on one examination of lack of full effort. [ECF No. 9-13

at 2586]

Plaintiff asserts here that the ALJ's finding that there "is no evidence showing compromise of a nerve root," and her conclusion that Listing 1.15 was not met, constitutes reversable error.

Listing 1.15, which relates to disorders of the skeletal spine resulting in compromise of a nerve root, requires documentation of *all* of the following four requirements:

A. Neuro-anatomic (radicular) distribution of [three] symptoms [pain, paresthesia, or muscle fatigue] consistent with compromise of the affected nerve root.

B. Radicular distribution of neurological signs present during physical examination or on a diagnostic test and evidenced by 1, 2, and either 3 or 4:

1. Muscle weakness; and

2. Sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root; and

3. Sensory changes evidenced by: a. Decreased sensation; or b. Sensory nerve deficit (abnormal sensory nerve latency) on electrodiagnostic testing; or

4. Decreased deep tendon reflexes.

C. Findings on imaging consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine.

D. Impairment-related physical limitation of musculoskeletal functioning that has lasted, or is expected to last, for a continuous period of at least 12 months, and medical documentation of:

1. a documented medical need for a walker, bilateral canes, or bilateral crutches, or a wheeled and seated mobility device involving the use of both hands; or

2. An inability to use one upper extremity to independently initiate,

sustain, and complete work-related activities involving fine and gross movements; and

   1. a documented medical need for a one-handed, hand-held assistive device that requires the use of the other upper extremity or a wheeled and seated mobility device involving the use of one hand; or

   2. an inability to use both upper extremities to the extent that neither can be used to independently initiate, sustain, and complete work-related activities involving fine and gross movements.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 §1.15. As relevant here, Subsection B requires evidence via physical examination or on a diagnostic test revealing, among other things, "sign(s) of nerve root irritation, tension, or compression, consistent with compromise of the affected nerve root." *See* § 1.15.B2. Subsection C of Listing 1.15 requires documentation of "[f]indings on imaging consistent with compromise of a nerve root(s) in the cervical or lumbosacral spine." *See* § 1.15.C. The ALJ did not specify whether her determination that there was no evidence showing compromise of a nerve root related to Subsection B or to Subsection C.

   Plaintiff argues, in his opening brief, that the ALJ's finding constituted error in that the record contained examination/testing evidence of nerve root damage in the form of positive Spurling tests (which is a sign of nerve root compromise in the cervical spine), and positive straight leg raise testing (which is a sign of nerve root compromise in the lumbar spine). *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00F2 (identifying types of examination testing that reveals nerve root damage). While these exam findings may constitute a portion of the evidence needed to establish "[r]adicular distribution of neurological signs present during physical examination or

on a diagnostic test" as required by Subsection B of Listing 1.15., they do not amount to findings of nerve root damage *on imaging* as required by Subsection C. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § C3a (defining medical imaging techniques). Plaintiff does not identify nerve root damage findings on imaging in his medical record, nor does my review reveal such findings. And, as such, Plaintiff did not meet her burden to demonstrate she met all the requirements of Listing 1.15 at step three. *See Lax v. Astrue*, *supra*, 489 F.3d at 1085 (noting that "[t]o show that an impairment or combination of impairments meets the requirements of a listing, a claimant must provide specific medical findings that support each of the various requisite criteria for the impairment."); *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (ruling that an impairment is presumptively disabling only if the evidence shows that all criteria of the listing are met: "[a]n impairment that manifests only some of those criteria, no matter how severely, does not qualify.").

Plaintiff further argues that when evidence of nerve root damage exists based on examination or diagnostic testing under Subsection B.2, as here, the existence of nerve root damage is present, and thus imaging findings required under Subsection C only need to be *consistent with* nerve root compromise. Because the record reveals several imaging reports that have "positive findings" which, he contends, are consistent with nerve root compression, Plaintiff argues that the ALJ's finding of "no evidence of showing compromise of a nerve root" was inaccurate and that his degenerative disc disease does not necessarily fail to meet the medical criteria of Listing 1.15.

I disagree with Plaintiff's unsupported interpretation of the interplay between Subsection B and C. Plaintiff argues, in essence, that signs of nerve root irritation, tension, or compression on examination (that constitute evidence sufficient to document radicular distribution of neurological signs at Subsection B.2) in turn, establishes the existence of nerve root compromise. Then, Subsection C only requires imaging consistent with the existing nerve root compromise already established by Subsection B in order to meet the medical criteria of Listing 1.15. Such interpretation is inconsistent with the purpose of a presumptive disability finding at step three in that the criteria defining the listed impairments are at an explicitly higher level of severity than the statutory standard. *Sullivan v. Zebley*, *supra*, 493 U.S. at 532. Moreover, "[b]ecause the Listings, if met, operate to cut off further detailed inquiry, they should not be read expansively." *N.M.E. v. Kijakazi*, 693 F. Supp. 3d 1119, 1124 (D. Colo. 2023) (quoting *Potter v. Colvin*, Civil Action No. 14-cv-01783-CBS, 2015 WL 4882574, at *4 (D. Colo. Aug. 17, 2015) (unpublished)). Finally, I note that Plaintiff has provided no authority for this interpretation, and has raised this argument for the first time in his reply brief. ECF No. 12 at 1-2. *See Staheli v. Comm'r, SSA*, 84 F.4th 901, 908 (10th Cir. 2023) (indicating that arguments raised for the first time in a social security appeal reply brief are deemed waived) (citing *Mays v. Colvin*, 739 F.3d 569, 576 n.3 (10th Cir. 2014)).

Accordingly, because Plaintiff did not meet his burden to show that his degenerative disc disease met the criteria of Listing 1.15, the ALJ did not err when ruling that his physical impairment was not so severe as to preclude substantial

gainful employment at step three of the sequential process for determining disability.

## B. Assessment of Medical Opinion Evidence

Plaintiff also argues, on appeal, that the assessed RFC is not supported by substantial evidence in that the ALJ improperly evaluated the persuasiveness of the conflicting medical opinions contained in the record.

For claims filed on or after March 27, 2017 – as is the case here because Plaintiff filed his DIB application in June of 2019 – the ALJ will not defer or give specific evidentiary weight to any medical opinions or prior administrative medical findings. 20 C.F.R. § 404.1520c. Instead, under the applicable regulations the ALJ will consider the persuasiveness of each medical source opinion using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, the frequency of examinations, the purpose and extent of the treatment relationship, and the examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(c)(1)-(5); *see also Zhu v. Comm'r, SSA*, No. 20-3180, 2021 WL 2794533, at *6 (10th Cir. July 6, 2021) (unpublished). The most important factors in evaluating persuasiveness are supportability and consistency. *Miles v. Saul*, No. 20-CV-1456-WJM, 2021 WL 3076846, at *2-3 (D. Colo. July 21, 2021) (unpublished).

For supportability, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Id.* (quoting *Vellone v. Saul*, No. 120CV00261RAKHP, 2021 WL 319354, at

*6 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Vellone on behalf of Vellone v. Saul*, No. 20-CV-261 (RA), 2021 WL 2801138 (S.D.N.Y. July 6, 2021) (S.D.N.Y. Jan. 29, 2021) (unpublished) (citing 20 C.F.R. §§ 404.1520c(c)(1)); *see also Lenoble v. Kijakazi*, No. 22-CV-00094-MEH, 2022 WL 16855693, at *7 (D. Colo. Nov. 10, 2022) (unpublished) ("supportability" is the extent to which the source supports his or her opinion with objective medical evidence and an explanation). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Miles v. Saul, supra*, 2021 WL 3076846, at *2-3 (citing 20 C.F.R. § 416.920c(c)(2)); *see also Lenoble v. Kijakazi, supra*, 2022 WL 16855693, at *7 ("consistency" is the extent to which the evidence from the other medical and nonmedical sources is consistent with the opinion). The ALJ must explain his or her approach with respect to the supportability and consistency factors when considering a medical opinion, but he or she is not required to expound on the remaining three factors unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. *Miles v. Saul, supra*, 2021 WL 3076846, at *3 (citing 20 C.F.R. §416.920c(b)(2)-(3)).

When evaluating the ALJ's rationale for how persuasive a medical opinion is, the court must "determine whether it is supported by such relevant record evidence as a reasonable mind might accept as adequate to support a conclusion." *Lenoble v. Kijakazi, supra*, 2022 WL 16855693, at *7 (quoting *Victoria Jean G. v. Kijakazi*, No. 20-4053-JWL, 2021 WL 4168124, at *5 (D. Kan. Sept. 14, 2021) (unpublished)).

Additionally, so long as the court can "trace the path of the adjudicator's reasoning," the ALJ has met the articulation requirements. *Nielsen v. Comm'r, SSA*, No. 21-4136, 2022 WL 15570650, at *5 (10th Cir. Oct. 28, 2022) (unpublished).

**Opinions Related to Physical Limitations**

The ALJ's determination of the opinion evidence regarding Plaintiff's physical limitations, and whether he was able to perform light work (as the ALJ found) or only sedentary work, is as follows.

Amy Tichy-Smith is a physical therapist who provided a Functional Capacity Evaluation on November 29, 2018, for Plaintiff's workers' compensation claim following an on-the-job accident on his alleged onset date in October of 2017. ECF No. 9-7 at 591-600. Ms. Tichy-Smith opined that Plaintiff "qualifies for sedentary work" in that he could lift 5-10 pounds for 25 minutes to 2.5 hour per day, and that he could sit, stand and walk each occasionally. *Id.* at 591-94.

The ALJ found that the opinion provided by Ms. Tichy-Smith was not persuasive. *Id.* at 2599. In so doing, the ALJ determined that:

> Physical therapy records associated with [Ms. Tichy-Smith's] exam might support the opinion to some degree, but opinion is not consistent with the evidence as a whole. Subsequent physical examinations showed the claimant had some tenderness in the cervical, thoracic, and lumbar spine but he was awake, alert, oriented, had normal heel and toe walk, had 5/5 strength in upper and lower extremities, negative straight leg raise, and normal sensation. He reported that he could sit for two hours and walk up to one mile at a time. On at least one occasion, there was an issue raised as to the claimant's giving less than full effort. Physical therapy records showed that the claimant stopped attending even though he needed it. This functional capacity evaluation occurred several weeks prior to the claimant's being found to be at maximum medical improvement on December 18, 2018. At that time, Dr. Burns indicated that the claimant's cervical and lumbar areas had resolved, and she provided no future care, as the claimant had sustained no functional benefit from any

intervention. Thus, the results of the functional capacity examination do not reflect ongoing work-related functional limitations, and is not probative of permanent and total disability. [*Id.* at 2599 – citations to the record omitted]

In August through November of 2018, Emily K. Burns, M.D., issued opinions on Plaintiff's workers' compensation claim indicating that Plaintiff could occasionally bend, occasionally crawl, occasionally climb, lift 10 pounds or less, and stand or sit for 30 to 60 minutes then switch. ECF No. 9-12 at 2403-2430. The ALJ found the opinion provided by Dr. Burns to be not persuasive because it was not well supported or consistent with the evidence as a whole. ECF No. 9-13 at 2599-600. In so doing, the ALJ found that:

Dr. Burns did not provide any narrative explanation as to the basis of the assessed limitations, and did not cite any objective medical findings in support thereof. Dr. Burns's notes from that time frame do reflect some discomfort, and some spinal tenderness or limited range of motion. However, these opinions and findings were all prior to the claimant's being found to be at maximum medical improvement on December 18, 2018. At that time, Dr. Burns indicated that the claimant's cervical and lumbar areas had resolved, and she provided no future care, as the claimant had sustained no functional benefit from any intervention. The limitations that Dr. Burns assessed do not reflect permanent limitations, and thus are not supportive of total and permanent disability. [*Id.* at 2600 – citations to the record omitted]

Lynn Parry, M.D., a neurologist, conducted an independent medical examination in April of 2019, and opined that Plaintiff had a permanent impairment of 32 percent on his workers' compensation claim. ECF No. 9-7 at 749-67. The ALJ agreed with Dr. Parry's determination that Plaintiff could not return to his past work (which was in the medium to heavy physical exertion range), but found that she was not bound by Dr. Parry's impairment rating because it was based on the policies of another governmental agency, citing 20 C.F.R. §404.1504. ECF No. 9-13 at 2600.

On November 25, 2019, James McElhinney, M.D., reviewed the medical records for Plaintiff's DIB application, and opined that he could occasionally lift and/or carry 20 pounds, he could frequently lift and carry 10 pounds, and he could stand and/or walk, as well as sit, for about 6 hours in an 8-hour workday. ECF No. 9-3 at 103-05. As such, based on the totality of the medical evidence, Dr. McElhinney opined that "a light RFC is appropriate." *Id.* at 105. ECF No. 9-8 at 1045. Virginia Thommen, M.D., subsequently reviewed Plaintiff's medical record (on August 19, 2020), and also concluded that a light RFC was appropriate. ECF No. 9-3 at 126-128. ECF No. 9-11 at 2109.

As to the opinions provided by Dr. McElhinney and Dr. Thommen (the state agency consultants) – which assessed "light work with some limitations as to postural activities" – the ALJ found them to be persuasive as "supported by the consultants' reviews of the record [which] is consistent with the medical evidence overall" based on the following:

> The claimant has reported back pain since his workplace injury in October 2017 but he has had improvement. In 2018, he said he could sit for two hours and walk up to one mile at a time. While there was alleged numbness into the right arm and hand in 2019, he had intact sensation and good grip. In February 2021, his neck had normal range of motion. At the psychological consultative examination, he reported being able to get in and out of bed, dress and bathe himself, drive, cook, and clean. On exam, he had decreased lumbar flexion but normal gait, no assistive device, no spinal tenderness, normal tone, 2+/4 deep tendon reflexes, no clonus, normal fine motor, 5/5 strength, 4/5 grip strength, intact sensation, and normal cerebellar. Treatment notes in 2020 and 2021 showed he denied radicular symptoms and his lumbar pain was subjectively and objectively improved by injections and ablations, as discussed above in more detail. Diagnostic imaging shows only mild findings after the motor vehicle accident. Prior imaging of the claimant's back was not mostly normal per the consultants. More recent evidence notes improvement in spinal symptoms with injections and ablation procedures. [ECF No. 9-13 at 2595-96 –

citations to the record omitted]

On July 18, 2020, Kevin Silva, D.O., provided a physical consultative examination of Plaintiff and concluded that he could sit stand and walk for about four to six hours each in a workday, he could lift 10-15 pounds frequently and 15-20 pounds occasionally, and he could carry about 15-20 pounds frequently and 20-25 pounds occasionally, but that lifting and carrying heavy objects would likely exacerbate his pain. ECF No. 9-11 at 2073-79. As such, Dr. Silva concluded that Plaintiff "is capable of slightly more than light work" with no postural or manipulative restrictions, and that no assistive device was recommended. *Id.*

The ALJ found that Dr. Silva's opinion was "somewhat persuasive, as it is somewhat supported by the examination findings," but that the portion of his opinion regarding Plaintiff's ability to sit, stand and walk was "not persuasive." ECF No. 9-13 at 2596-97. The ALJ based her determination on the following:

> There was negative Romberg, normal coordination, normal gait, no assistive device, no spinal tenderness, normal tone, 2+/4 deep tendon reflexes, no clonus, normal fine motor, 5/5 strength, 4/5 grip strength, intact sensation, and normal cerebellar. Lumbar flexion was slightly decreased at 45 degrees. This opinion is also somewhat consistent with the overall medical evidence. In March 2020, neurology records showed complaints of ongoing pain rated 7/10 daily but he denied radicular symptoms, his thoracic symptoms had resolved since ablation, and he was status post radiofrequency ablation targeting the bilateral facets at L4-5 and L5-S1 with 90 percent relief. The physical examination showed no acute distress but there was some pain with flexion and extension. He reported in April 2020 that he got significant relief with L3-4 facet injections. A lumbar MRI from 2019 was referenced as showing mild canal stenosis at L3-4 due to a disc bulge and a left foraminal disc protrusion, shallow right foraminal disc protrusion with annular tear at L4-5, and shallow left paracentral disc protrusion at L5-S1 with annular tear. While Dr. Silva's opinion indicates the claimant is capable of slightly more than light work, the undersigned limited the claimant to light [work] based on the evidence of decreased lumbar flexion with discernible discomfort noted at the consultative examination, the mild to

somewhat moderate findings on the lumbar MRI, and the effects from the subsequent motor vehicle accident. A slightly higher exertional level might make sustaining fulltime employment more difficult. Additionally, his ongoing pain complaints support limiting him to a light exertional level rather than sedentary because his pain is likely not as high as alleged given the significant improvements with ablations and injections.

However, the portion of Dr. Silva's opinion regarding the claimant's ability to sit, stand and walk [was] not persuasive. The opinion in that regard is minimally supported but not fully consistent with the evidence as a whole. While Dr. Silva explained that sitting, standing or walking for prolonged periods of time would likely exacerbate the claimant's back pain, Dr. Silva did not tie those limitations to any specific objective examination findings. He did note the claimant appeared uncomfortable while seated; however, gait was normal and symmetric without distinct ataxic, antalgic or neurogenic phases. Treatment notes from August 2018 indicate the claimant was a little uncomfortable sitting in the chair during examination—a little fidgety. In September 2018, the claimant was noted to be uncomfortable at rest after sitting much, and frequently changing position. In June 2018, the claimant reported that pain prevented him from sitting more than one-half hour. In October and November 2018, the claimant was noted to be uncomfortable at rest, frequently changing positions. However, the overall record does not reflect ongoing observations or complaints of discomfort while sitting, such that the claimant would be precluded from sitting six hours in an eight-hour workday or prolonged sitting. Further, the evidence as a whole does not indicate ongoing observations or complaints of back pain such that the claimant would be precluded from standing or walking a combined total of six hours in an eight-hour workday or engaging in prolonged standing or walking. In October 2017, it was noted that the claimant needed to start walking. Notes from January 2018 indicate the claimant was walking about one-half mile at a time, and he was to work up to one mild. In February 2018, the claimant was walking up to a mile at a time. Later physical therapy records in 2018 reflect that sitting, standing and walking aggravate the claimant's pain. In June 2018, the claimant reported that pain prevented him walking more than one mile. However, the ability to walk one mile indicates some ability to engage in prolonged walking. At that time, the claimant also reported that pain prevented him from standing more than one-half hour at a time. However, by August 2018, the claimant was able to stand for over an hour. He was able to sit about an hour, then got up and walked around. He did not really lie down during the day. In September 2018, the claimant reported getting pain with walking, and he was doing less than one mile. Records from April 2021, December 2021, April 2022 and June 2022 note the claimant's transport mode was walking. Records from 2021 and 2022 also note improvement in spinal symptoms with injections and ablation procedures. Considered as a whole, the great weight of the evidence does not

substantiate a finding of ongoing limitations in sitting, standing or walking in excess of the residual functional capacity assessed by the undersigned. [ECF No. 9-13 at 2596-97 – citations to the record omitted]

Lastly, Kimberlee Terry, M.D., reviewed the medical records on July 31, 2022, and found that overall they supported a "light" physical RFC, with no postural limitations. ECF No. 9-18 at 2832. The ALJ found this opinion to be "not fully persuasive" as it was only "somewhat supported by Dr. Terry's explanation and somewhat consistent with the evidence as a whole." ECF No. 9-13 at 2600. The ALJ concluded that given Plaintiff's "pain and other symptoms, with imaging evidence of spinal pathology, and need for treatment including injections and ablation procedures," his RFC required "more restrictive postural limitations." *Id.*

### Opinions Related to Mental Limitations

The ALJ's determination of the persuasiveness of the conflicting opinions of record related to Plaintiff's mental limitations on his ability to work was as follows.

On December 12, 2019, Gayle Frommelt, Ph.D., reviewed Plaintiff's records and determined that his anxiety and depression resulted in mild limitations in his ability to adapt and manage oneself, and moderation limitations in his ability to understand, remember or apply information; interact with others; and concentrate, persist or maintain pace (known as the "Paragraph B" criteria). ECF No. 9-3 at 100-102. Mark Suyeishi, Psy.D., subsequently reviewed Plaintiff's records (on June 18, 2020) and found that Plaintiff suffered from moderate limitations in the Paragraph B criteria. *Id.* at 123-130. ECF No. 9-10 at 1915.

The ALJ ruled that the assessments of mild to moderate limitations in the

Paragraph B criteria found by Dr. Frommelt and Dr. Suyeishi (the state agency consultants), were persuasive. ECF No. 9-13 at 2597. In so doing, the ALJ found that the opinions were:

> supported by the consultants' review of the record. They found diagnoses of MDD, GAD, PTSD and likely somatic disorder. They noted that the claimant endorsed difficulty in all domains, was receiving ongoing treatment, and was compliant with the treatment regimen. They further noted the records from Mr. Bramble showed fairly normal mental status examinations except as to mood and affect. In March 2020, Mr. Bramble's notes showed mild depression, the claimant was becoming more active, he was not isolating as much, he was consuming less alcohol, and he had no complaint about being in distress. The rest of the medical record is consistent with this in that it showed some ongoing depression and anxiety but mental status examinations were largely unremarkable and he was able to handle a moderate degree of medical decision-making to manage his conditions. In 2021, he was able to travel to Oklahoma, indicating he was capable of handling the mental demands of long distance travel, which requires being around and interacting with people. [*Id.* – citations to the record omitted]

On December 6, 2019, Emily Ragsdale-Kuepper, Psy.D., conducted a psychological/mental status consultative examination of Plaintiff and opined that he f "would greatly struggle in any work environment due to the physical discomfort in his back as well as the inability to engage with others." ECF No. 9-8 at 1067-70.

The ALJ noted this opinion was "[b]ased upon the claimant's self-report and performance in the evaluation process" and concluded that she could not find it persuasive in that:

> Dr. Ragsdale-Kuepper used vague terminology such as 'impaired' to describe limitations; she delved into areas that are out of the scope of this examination, such as his physical discomfort, which she did not translate into its effect on mental functioning. While the claimant does express having significant problems interacting with others, he did not have as severe of problems interacting at the examination as he claimed to have in his regular life. For example, he was described as fully cooperative in all aspects of the evaluation,

and he reported seeing his mother almost daily or would talk with her on the phone if he did not physically see her. He also reported spending time with the men living at the RV Park, friends, and family, which he said helped his mood. Furthermore, his function report indicates he can shop in stores, spend time with people, visit his mother, and get along with other people, including authority figures. He even reported that he had never been fired or laid off from a job because of problems getting along with other people. Regarding 'impaired' abilities to adapt to changes, concentrate, and recall, these are generally supported by the specific examination findings identified above by the examiner. This opinion is also consistent with the overall medical evidence showing unremarkable mental status examinations except for some sadness, stress and tearfulness at times and scores on the depression and anxiety screens were in the mild range. He had a moderate amount of stress in October 2018. In July 2019, the claimant excitedly shared that he was looking into buying a tractor with multiple attachments and a trailer so that he could start a small business and work for himself part-time.

Dr. Ragsdale-Kuepper's opinion did not identify specific work-related functional limitations that could be adopted into the residual functional capacity. Dr. Ragsdale-Kuepper's vague conclusions that the claimant would 'greatly struggle in any work environment,' had ability to adapt to changing situations/environment that was 'likely to be impaired,' and had attention, concentration and memory that 'appear to be impaired' do not equate to any specific work-related functional limitations. [ECF No. 9-13 at 2597-98 – citations to the record omitted]

However, the ALJ went on to conclude that "[w]hile the undersigned cannot find [Dr. Ragsdale-Kuepper's] opinion persuasive, the undersigned notes that the opinion is not necessarily inconsistent with the assessed residual functional capacity, which limits the claimant to routine, repetitive tasks and simple decision making, as well as work that is not in close proximity to coworkers/supervisors and [requires] no frequent/prolonged contact with the public." *Id.* at 2598.

Plaintiff's treating therapist, Joshua Bramble, L.P.C., completed a Mental Residual Functional Capacity Questionnaire on February 3, 2021, and opined that: Plaintiff suffered from many marked and extreme mental limitations on his ability to

work; he would miss more than four days of work per month; and he could never interact with supervisors and coworkers. ECF No. 9-11 at 2215-2221.

The ALJ determined that Mr. Bramble's opinion was "not persuasive" on the following basis:

> In his function report, the claimant reported that he had never been fired or laid off from a job because of problems getting along with other people. Mr. Bramble's own records in 2018 to 2020 reflected mental health treatment but the mental status examinations were unremarkable except for some sadness, stress and tearfulness at times and his scores on the depression and anxiety screens were in the mild range. Statements made by the claimant to Mr. Bramble during treatment also support he was doing better mentally than assessed . . . by Mr. Bramble. The claimant reported spending time with the men living at the RV Park, friends, and family, which helped his mood. In September 2018, his therapist noted that he was overall progressing as expected. He had a moderate amount of stress in October 2018. In July 2019, the claimant excitedly shared that he was looking into buying a tractor with multiple attachments and a trailer so that he could start a small business and work for himself part-time. In September 2019, he reported better control over his emotions, such as anger. He was in a relationship that was going well, and his girlfriend had moved in with him. He felt happy. In July 2020, the claimant complained of back pain and financial stress but he was alert and oriented, and had an appropriate mood and affect, cheerful mood, and no thought disorder. He said he was spending time with his landlord, and this was helping his mood. He had increased symptoms in September 2020 based on temporary stressors of his car being damaged after loaning it to someone and having to wear a mask because of the pandemic. While Mr. Bramble noted that his anxiety was starting to become debilitating, this seems premature since the claimant had been doing fairly well overall until this point. This opinion is also not consistent with the overall medical record. Hospital records in February 2021 reflected alert, fully oriented, normal mood, normal behavior, and normal judgment. His pain manager indicated around this time that the claimant was able to handle moderate degree of medical decision-making. Treatment notes from a new counselor in March and April 2021 showed complaints of anxiety and being short with people but he admitted drinking too much (*i.e.*, 6-15 beers per day). Other than affect, the mental status examination was within normal limits. [ECF No. 9-13 at 2598-99 - citations to the record omitted]

On July 25, 2022, Mark Dilger, M.D., reviewed Plaintiff's records and found that Plaintiff had mild limitations in his ability understand, remember or apply

information and to adapt and manage oneself, as well as moderate limitations in his ability to interact with others, and concentrate, persist or maintain pace. ECF No. 9-18 at 2825. Dr. Dilger concluded that Plaintiff's was not precluded from all work although he was limited "to performing and persisting at tasks that can be learned in up to three months with some reduced brief public contact within physical limitations." *Id.* at 2827.

The ALJ found this opinion to "not be fully persuasive" because although it was "somewhat supported by Dr. Dilger's review of the evidence and explanation and somewhat consistent with the evidence as a whole," it was functionally vague. ECF No. 9-13 at 2600. The ALJ also found that Dr. Dilger's opinion was "not necessarily inconsistent with the residual functional capacity assessed . . . which limits the claimant to routine repetitive tasks and simple decision making, work that is occasionally in close proximity to coworkers or supervisors, and no frequent or prolonged direct contact with the public." *Id.*

Erik Foss, L.P.C, L.A.C., was Plaintiff's treating therapist starting in May of 2021. ECF No. 9-19 at 3341. Mr. Foss provided an opinion, on January 5, 2023, indicating that Plaintiff suffered from moderate limitations in his ability to understand, remember or apply information, and marked limitations in his ability to interact with others, to concentrate, persist or maintain pace, and to adapt or manage oneself. *Id.* at 3347. In addition, Mr. Foss also found the Plaintiff's mental impairments would substantially interfere with his ability to work on a regular and sustained basis at least 20 percent of the time. *Id.*

The ALJ determined that Mr. Foss's opinion was not persuasive, and found

that:

> This opinion is not well supported or consistent with the evidence as a whole. Mr. Foss did not provide any narrative explanation as to the basis of his conclusions, and he did not cite any objective medical findings in support thereof. The opinion does not appear to be internally consistent. Despite his finding of marked impairment in most areas and finding the claimant unable to work at least 20 percent of the time on a regular and sustained basis, Ms. Foss found the claimant would not need to miss any days of work each month due to mental impairment or treatment of mental impairment. As discussed in detail in finding four of this decision above, the evidence does not support more than moderate limitations in the '[P]aragraph B' criteria. The undersigned notes that Mr. Foss submitted a subsequent statement dated January 27, 2023, which indicates that annotations reflected in his records may not be entirely accurate on an ongoing basis. [ECF No. at 2600-001 - citations to the record omitted]

### Plaintiff's Challenges to the ALJ's Determinations

On appeal, Plaintiff contends that the ALJ erred in finding that Ms. Tichy-

Smith's opinion was not persuasive because it was actually both supported by her

own examination findings, as well as consistent with the medical records in which

his pain is "well-documented." Plaintiff points to treatment notes in the record in

which he reports pain to caregivers and his therapist, and indications of positive

Spurling tests upon examination. *See* ECF No. 10 at 20-22.

Plaintiff also takes issue with the ALJ's finding that the opinions provided by

the state agency consultants regarding his physical limitations (Dr. McElhinney

and Dr. Terry) were persuasive. He contends that the opinions were not supported

in that there is little more than a single paragraph to support each of the

consultants' opinions, the treatment records do not support their conclusions, and

they are inconsistent with most of the other opinions in the record. *Id.* at 22.

Finally, Plaintiff argues that the ALJ "provided no cogent explanation of why" she did not accept Dr. Silva's opinions related to Plaintiff's sitting, standing, and walking limitations, and instead faulted Dr. Silva for failing to tie those limitations to any "specific objective examination findings.'" *Id.* at 23 (quoting ECF No. 9-13 at 2596). Plaintiff further argues that the ALJ's finding that "the overall record does not reflect ongoing observations or complaints of discomfort while sitting" was inconsistent with numerous notations in the record of his difficulties sitting, positive Spurling tests, positive straight leg raises, and physical therapy treatment notes indicating that he was unable to tolerate any position except sitting for more than five minutes. *Id.* at 23-24.

Plaintiff also argues that the ALJ erred in assessing the opinions related to his mental limitations on his ability to work. First, he challenges the ALJ's finding that the opinions provided by the state agency consultants regarding his mental limitations (Dr. Frommelt and Dr. Suyeishi) were persuasive, on the basis that they were supported by a single paragraph, the treatment records did not support their conclusions, and they were inconsistent with most of the other opinions in the record. ECF No. 10 at 22. In addition, he argues that Dr. Frommelt's opinion could not be deemed to be persuasive because, when explaining why her opinion disagreed with that of the DDS consultative examiner, Dr. Frommelt simply stated that "[t]he CE examiner's opinion is an overestimate of the severity of the individual's restrictions/limitations." *Id.* (quoting ECF No. 9-3 at 109).

Plaintiff also argues that the ALJ's reasons for finding Dr. Ragsdale-Kuepper's

opinion unpersuasive were "illogical." ECF No. 10 at 24. Specifically, Plaintiff challenges the ALJ's finding that Dr. Ragsdale-Kuepper "used vague terminology such as 'impaired' to describe limitations," and that "she delved into areas that are out of the scope of this examination, such as his physical discomfort, which she did not translate into its affect [sic] on mental functioning." *Id.* at 25 (quoting ECF No. 9-13 at 2598). Additionally, Plaintiff claims that the ALJ's reliance on the fact that his "reported alcohol use of 12-15 beers daily was likely affecting his daily activities" – as reported to Dr. Ragsdale-Kuepper – is not supported by other evidence and no other evaluator found the effects of his alcohol use to be a contributing factor on his limitations. ECF No. 10 at 26 (quoting ECF 9-13 at 2587).

Finally, Plaintiff contends that the ALJ erred in finding the opinion of Mr. Bramble, his treating therapist, unpersuasive based on an incomplete recitation of the facts. He argues that the ALJ's description of Mr. Bramble's treatment notes as being "unremarkable except for some sadness, stress and tearfulness at times" is a gross mischaracterization. ECF No. 10 at 26-27 (quoting ECF No. 9-13 at 2598). Plaintiff points out that the treatment notes regularly reflect more than just the occasional tears and hurt feelings, and refers to a note on October 24, 2018, when he broke down and was overwhelmed when a consult with a neurosurgeon found nothing wrong with his spine, and he experienced up and down emotions and "periods of anger, frustration, sadness, and hopelessness." *Id.* (quoting ECF No. 9-7 at 524 – describing Plaintiff as presenting in a "moderate amount of distress"). Plaintiff argues that the record reflects many entries such as this, and the ALJ unfairly mischaracterized Mr.

Brambles' notes as generally "unremarkable." ECF No. 10 at 26-27.

Plaintiff's arguments do not challenge the ALJ's application of the legal standards to her determinations of persuasiveness of the record opinions, and I find that the ALJ's order reveals that she relied on the supportability and the consistency of the opinions when assessing persuasiveness as required by 20 C.F.R. § 404.1520c(b)(2). *Miles v. Saul, supra,* 2021 WL 3076846, at *3 (ruling that the ALJ must explain the supportability and consistency factors when considering a medical opinion). Application of the correct legal standards is met when the court is able to "follow the [ALJ's] reasoning in conducting [its] review [of the ALJ's analysis of a medical opinion] and can determine that correct legal standards have been applied." *P.T. v. Comm'r of Soc. Sec.*, No. 22-CV-02926-STV, 2023 WL 8108569, at *8 (D. Colo. Nov. 17, 2023) (unpublished) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012)).

In addition, I find that the ALJ's determinations of persuasiveness of the medical opinions are "supported by such relevant record evidence as a reasonable mind might accept as adequate to support a conclusion." *Lenoble v. Kijakazi, supra*, 2022 WL 16855693, at *7. As set out in detail above, the ALJ's order provided comprehensive and sufficient evidence that is more than adequate to support her supportability and consistency determinations. *Id.*; *see also Smallwood v. Kijakazi*, 2022 WL 4598499, at *3 (D.N.M. Sept. 30, 2022) (unpublished) (noting that "courts have affirmed 'minimalist' supportability and consistency findings as long as the ALJ points to *some evidence* in such a way that the Court can follow

the ALJ's reasoning." (emphasis added) (collecting cases)).

Rather, in challenging the ALJ's determination of the pervasiveness of the medical opinions, Plaintiff seeks a reweighing of the evidence in his favor. As noted, the evidence is equivocal, and a reviewing court is to defer to the ALJ's weighing of such contradictory evidence. *Casias v. Sec'y of Health & Hum. Servs.*, 933 F.2d 799, 800 (10th Cir. 1991) (ruling that the courts may "neither reweigh the evidence nor substitute [its] judgment for that of the agency"). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue, supra*, 489 F.3d at 1084 (quoting *Zoltanski v. F.A.A., supra*, 372 F.3d at 1200).

Because the ALJ's discussion of the opinions addresses both the supportability and consistency, and her findings related to the persuasiveness of those opinions were supported by substantial evidence, I find no error in the ALJ's analysis of the opinion evidence in the record.

## C. Assessment of Plaintiff's Pain

Finally, I address Plaintiff's argument that the assessed RFC is not supported by substantial evidence in that the ALJ erred when "discounting" his reported pain and the resulting limitations on his ability to work.

An ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the

adjudicator evaluated the individual's symptoms." Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 at *10 (Oct. 25, 2017); *see also Toledo v. Comm'r, SSA*, No. 24-5001, 2024 WL 4357913, at *2 (10th Cir. Oct. 1, 2024) (unpublished). If the claimant's statements regarding the intensity, persistence, and limiting effects of his or her symptoms "are inconsistent with the objective medical evidence and the other evidence," the ALJ must evaluate whether the claimant's "symptoms are less likely to reduce . . . his capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3p, 2017 WL 5180304 at *8. So long as the ALJ sets forth the specific evidence he or she relies upon in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a 'formalistic factor-by-factor recitation of the evidence.'" *Keyes-Zachary v. Astrue, supra*, 695 F.3d at 1167 (quoting *Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000)).

Plaintiff contends that there is "ample objective evidence" in the medical records that he suffered from back pain to the extent that it interfered with his ability to function. This evidence includes clinical examination results that revealed pain and spasms in his spine; x-rays and MRI imaging that showed spondylosis, disc desiccation, radiculopathy, central canal stenosis, and disc bulges; and a diagnosis, two months after his on-the-job accident, of "right paracentral disc bulge and foraminal stenosis at C5-C6 and an annular tear and foramina stenosis on the left at L5-S1 and slight disc bulge at L4-L5" on an MRI. ECF No. 10 at 29 (citing ECF No. 9-8 at 1028-1031). He contends that the ALJ "appeared to ignore" this objective

evidence as a basis for his pain or, at the least, the ALJ did not discuss its relevance when assessing his RFC. Plaintiff also refers to evidence of his use of pain medication and other treatments (such as chiropractic adjustments, hot and cold packs, changing positions, spinal facet injections, and behavioral health modalities) which, he contends, reveals the extent of his back pain. *Id.* at 29-30. In sum, Plaintiff asserts that the ALJ's failure to address this evidence when finding that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his claimed] symptoms are not entirely consistent with the medical evidence" [ECF No. 9-13 at 2589], constitutes reversible error.

During his testimony, Plaintiff alleged that he experienced debilitating symptoms and limitations due to his back pain. *See* ECF No. 9-3 at 70-77, ECF No 9-13 at 2630-2632. The ALJ found that the limitations alleged by Plaintiff were not consistent with the medical record, which demonstrated only "symptoms that do not rise to the level of disability especially with treatment." ECF No. 9-13 at 2589. In so finding, the ALJ set out in her order a comprehensive recitation of the record evidence from Plaintiff's on-the-job accident in late 2017, through his examinations, imaging, and various treatments which resulted in partial relief by September/October of 2022. *Id.* at 2589-2592. Based on her extensive review of the medical records, the ALJ concluded that although Plaintiff "clearly has some pain" as supported by "his history, complaints, diagnostic imaging, a motor vehicle accident and some minor abnormal findings on physical and mental exams," the medical record revealed improvement over time with treatment. *Id.* at 2594. In addition to the objective medical evidence of

record, the ALJ also relied upon evidence that Plaintiff's admitted activity level revealed less limitations than those alleged, evidence of malingering in 2017, and that Plaintiff appeared to engage in some part-time work during the relevant period. *Id.*

Plaintiff argues here that the ALJ did not apply the applicable legal test when assessing the effects of his pain in that she failed to consider the specific factors set forth in SSR 16-3p. However, so long as the ALJ sets forth the specific evidence he or she relies on in evaluating Plaintiff's subjective complaints, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence [. . . as] common sense, not technical perfection, is our guide." *Toledo v. Comm'r, supra*, 2024 WL 4357913, at *2 (quoting *Keyes-Zachary v. Astrue, supra,* 695 F.3d at 1167).

In addition, Plaintiff argues that the ALJ's conclusions were not based on substantial evidence. While Plaintiff correctly asserts that there is ample medical evidence in the record that he suffered from back pain, the ALJ's finding that the extent of his claimed limitations was not entirely consistent with the medical evidence is clearly articulated and affirmatively linked to the evidence. *See generally K.B.D.T. v. O'Malley*, No. 23-CV-01781-NRN, 2024 WL 1972881, at *7 (D. Colo. May 3, 2024) (unpublished) (upholding the ALJ's determination when he explained "at length" why his was discounting the claimant's assertion of the limiting effects of his symptoms when such claims were inconsistent with the longitudinal medical record and the claimant's daily activities).

As such, I find no error as the ALJ adequately set forth the specific evidence she relied upon when evaluating Plaintiff's pain, and she provided reasons that were

supported by sufficient record evidence, when ruling that the limitations alleged by

Plaintiff were not consistent with the record.


ACCORDINGLY, for the foregoing reasons, I AFFIRM the final order of the

SSA Commissioner denying Plaintiff's application for disability insurance benefits.


Dated: November 5, 2024.

BY THE COURT:


    s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE